UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WELLS FARGO BANK, N.A, AS
TRUSTEE FOR OPTION ONE
MORTGAGE LOAN TRUST
2007-FXD1 ASSET-BACKED
CERTIFICATES, SERIES
2007-FXD1,

       **Plaintiff,**

v.

       CASE NO. _____

STEPHEN A. ABLITT, LAWRENCE
F. SCOFIELD, JOHN CONNOLLY,
JR., KEVIN D. GEANEY and
RACHELLE D. WILLARD,

       **Defendants**
_____/

## COMPLAINT

### Introduction

    This is a complaint for legal malpractice, negligence and breach of contract against the individual Defendants, all of whom are attorneys licensed by the Commonwealth of Massachusetts. The Defendants were and/or subsequently became the shareholders, partners, directors and officers of the law firm retained by the Plaintiff in relation to a mortgage foreclosure which culminated in a foreclosure auction of the encumbered property held on November 2, 2011, at which Plaintiff was the high bidder. Subsequent to the foreclosure auction and recordation of the foreclosure deed in favor of Plaintiff, it was discovered that notice of the foreclosure auction had not been given to a junior-lien holder who held an interest in the encumbered property at least 30 days prior to said auction. Plaintiff's Loan Servicer instructed the Defendants to rescind the November 2, 2011 auction and conduct a new sale giving proper

notice to all junior lien-holders.  Instead, the Defendants advised Plaintiff to execute a deed to the mortgagor for nominal consideration as the means to effectuate the rescission.  Acting on the advice of the Defendants, Plaintiff executed such a deed and the Defendants caused such deed to be recorded with the Registry of Deeds.  In so doing, the Defendants committed legal malpractice, negligence and breached their contract with the Plaintiff since the conveyance of the mortgaged property back to the mortgagor, without condition and without consideration, has ultimately divested the Plaintiff of its loan collateral without any means of recouping same.

Parties

1. Plaintiff, Wells Fargo Bank, N.A. ("Wells Fargo"), is national bank chartered and organized under the laws of the United States of America with a principal place of business at 101 N. Phillips Avenue, Sioux Falls, SD 57104 and brings this complaint in its capacity as Trustee for Option One Mortgage Loan Trust 2007-FXD1, Asset-Backed Certificates, Series 2007-FXD1.

2. Defendant, Stephen A. Ablitt, is an attorney duly licensed to practice law in the Commonwealth of Massachusetts who resides at 6 Ramsdell Way, Lynnfield, MA 01940.

3. Defendant, Lawrence F. Scofield, is an attorney duly licensed to practice law in the Commonwealth of Massachusetts who resides at 22 Grove Place, Unit 5, Winchester, Massachusetts 01890.

4. Defendant, John Connolly, Jr., is an attorney duly licensed to practice law in the Commonwealth of Massachusetts who resides at 17 Bourbeau Terrace, Newburyport, Massachusetts 01950.

5. Defendant, Kevin D. Geaney, is an attorney duly licensed to practice law in the Commonwealth of Massachusetts who resides at 17 Judge Street, Lynn, Massachusetts 01904.

6. Defendant, Rachelle D. Willard, is an attorney duly licensed to practice law in the Commonwealth of Massachusetts who resides at 79 Plymouth Street, Marlborough, Massachusetts 01752.

7. At all times relevant to the events described herein the Defendant, Stephen A. Ablitt, was a shareholder and/or officer of Connolly, Geaney, Ablitt & Willard, P.C. f/k/a Ablitt Scofield f/k/a Ablitt Law Offices, a Rhode Island professional corporation engaged in the practice of law in the Commonwealth of Massachusetts ("CGA&W").

8. Upon information and belief, at all times relevant to the events described herein and at least until sometime in May of 2013, the Defendant Lawrence F. Scofield was a shareholder and/or officer of CGA&W as its existed under its former name of Ablitt Scofield, P.C.

9. Upon information and belief, the Defendant John Connolly, Jr. has been a shareholder and/or officer of CGA&W since sometime in May of 2013.

10. Upon information and belief, the Defendant Kevin Geaney has been a shareholder and/or officer of CGA&W since sometime in May of 2013.

11. Upon information and belief, the Defendant Rachelle D. Willard has been a shareholder and/or officer of CGA&W since sometime in May of 2013.

12. As each of the Defendants is responsible for the acts of malpractice, negligence and breach of contract alleged herein, they will be collectively referred to as "Defendants" throughout.

<u>Jurisdiction and Venue</u>

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 since the amount in controversy exceeds $75,000 and the parties are diverse, and since the parties transact

business in the Commonwealth of Massachusetts and since the incident giving rise to the Plaintiff's claim occurred in the Commonwealth of Massachusetts venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(a)(2).

Facts

14. Joseph M. Valastro ("Valastro") acquired the real property known as 119 Riverlin Street, Millbury, Massachusetts (the "Property") by deed of Douglas Lebel et al, dated March 19, 1996 and recorded with the Worcester County (Worcester District) Registry of Deeds (the "Registry") in Book 17756, Page 49.

15. Valastro conveyed the Property to himself and Carolyn L. Boulette (now known as Carolyn L. Valastro but referred to throughout in this complaint as "Boulette") as joint tenants by deed dated August 12, 1998 and recorded with the Registry in Book 20291, Page 364.

16. Valastro and Boulette conveyed the Property solely to Valastro by deed dated August 30, 2002 and recorded with the Registry in Book 27399, Page 130.

17. Valastro conveyed the Property back to himself and Boulette as joint tenants by deed dated May 25, 2003 and recorded with the Registry on May 30, 2003 in Book 30216, Page 342.

18. Valastro and Boulette conveyed the Property solely to Valastro by deed dated May 28, 2004 and recorded with the Registry on June 3, 2004 in Book 33785, Page 319.

19. Valastro conveyed the Property to himself and Boulette by deed dated May 28, 2004 and recorded with the Registry on July 23, 2004 in Book 34194, Page 7.

20. Valastro and Boulette conveyed the Property solely to Valastro by deed dated September 14, 2006 and recorded with the Registry on September 18, 2006 in Book 39785, Page 277.

21. On September 13, 2006, Valastro gave a promissory note to Option One Mortgage Corporation ("Option One") in the original principal amount of $283,994.10 (the "Note"). The Note was indorsed in blank by Option One via an allonge to the Note. Wells Fargo is the holder of the Note and it or its designated document custodian is in physical possession of the Note. A true and accurate copy of said Note is attached hereto as Exhibit 1.

22. To secure the repayment and other obligations contained in the Note, Valastro granted a mortgage encumbering the Property to Option One in the original principal amount of $283,994.10 and dated September 13, 2006, which mortgage was recorded with the Registry on September 18, 2006 in Book 39785, Page 279 (the "Mortgage"). A true and accurate copy of the Mortgage is attached hereto as Exhibit 2.

23. By deed dated October 2, 2006, Valastro conveyed the Property to himself and his spouse, Boulette, as tenants-by-the entirety which deed was recorded with said Registry on October 13, 2006 in Book 39958, Page 234.

24. Option One assigned the Mortgage to Wells Fargo by Assignment dated April 23, 2008 and recorded with the Registry on April 29, 2008 in Book 42763, Page 4. A true and accurate copy of the assignment is attached hereto as Exhibit 3.

25. The terms of the Note and Mortgage required Valastro to make monthly payments of principal and interest as provided for in the Note, plus a monthly escrow as determined by the note-holder or by the loan servicer acting on behalf of the note-holder.

26. Beginning in 2009 and continuing thereafter, Valastro defaulted on his obligations under the Note and Mortgage by failing to make monthly payments of principal, interest and applicable escrows to Wells Fargo or to its designated Loan Servicer, Specialized Loan Servicing, LLC ("SLS").

27. On or about September 24, 2010, SLS sent a 150-day demand letter to Valastro which itemized a payment arrears of $48,590.40 which was required to be paid on or before February 22, 2011 in order to cure the on-going default and thereby avoid acceleration of the Note and foreclosure of the Mortgage.

28. Wells Fargo, through its loan servicer, SLS, then retained Ablitt Law Offices (which subsequently became Ablitt Scofield, P.C., and is now known as Connolly, Geaney, Ablitt & Willard, P.C.) (hereinafter the "Firm") to prosecute a foreclosure action on behalf of Wells Fargo as holder of the Note and Mortgage. SLS specifically instructed the Firm to prosecute the foreclosure in the name of Wells Fargo and further advised that if Wells Fargo were to be the high bidder at the foreclosure auction, the foreclosure deed to be prepared by the Firm was to name Wells Fargo as the grantee.

29. On or about May 25, 2011, the Firm filed a Complaint to Determine Military Status with the Land Court Department of the Trial Court on behalf of Wells Fargo in which Wells Fargo was named as the Plaintiff and Valastro and Boulette, as co-owners of the equity of redemption under the Mortgage instrument, were named as the Defendants.

30. On September 16, 2011, the Land Court issued Judgment in favor of Wells Fargo finding that neither Valastro nor Boulette were entitled to the benefits of the Servicemembers Civil Relief Act, 50 U.S.C. App. § 501 (et seq.).

31. The Firm then scheduled a foreclosure sale of the Property on behalf of Wells Fargo and pursuant to the power of sale in the Mortgage to be conducted on September 1, 2011, at 2:00 p.m..

32. Pursuant to G.L. c. 244, §14, Wells Fargo was required to give written notice of the foreclosure sale by certified or registered mail to the owner(s) of the Property, the

mortgagor(s), and any other persons having a recorded interest in the property as of thirty days prior to the foreclosure sale date and junior to the Mortgage at least fourteen days before the foreclosure sale date.

33. As of thirty days (30) prior to the foreclosure sale scheduled for September 1, 2011, the Property was encumbered by the Mortgage, as well as two junior executions in favor of Capital One Bank (USA) NA recorded with the Registry in Book 44373, Page 174 and in Book 45235, Page 391 respectively, and a Notice of Federal Tax Lien recorded in Book 41713, Page 225.

34. Upon information and belief, the Firm gave the requisite notice of the September 1, 2011 foreclosure sale on behalf of Wells Fargo to Valastro, Boulette, Capital One Bank (USA) and the Internal Revenue Service.

35. Upon information belief, on September 1, 2011, the foreclosure sale was postponed by public proclamation to November 2, 2011 at 10:00 a.m.

36. On November 2, 2011 the foreclosure sale proceeded as scheduled via a licensed auctioneer retained by the Firm and the Property was sold to Wells Fargo as the highest bidder for the amount of $213,000.00.

37. The Firm secured a foreclosure deed conveying the Property to Wells Fargo and an affidavit of sale executed by Wells Fargo by its attorney-in-fact SLS and caused the same to be recorded with the Registry on December 19, 2011.

38. Upon information and belief, at a point subsequent to the recordation of the foreclosure deed to Wells Fargo, it came to the attention of SLS and/or the Firm that a Notice of Massachusetts Tax Lien in the original principal amount of $4,528.02 had been recorded with the Registry on August 29, 2011 in Book 47763, Page 198 and that the Firm had not furnished the

7

Massachusetts Department of Revenue (the "DOR") with notice of the November 2, 2011 foreclosure sale as required by c. 244, §14.

39. Sometime in January or February of 2012, the Firm advised Wells Fargo that the completed foreclosure sale had not extinguished the DOR's lien due to the lack of notice to the DOR.

40. Upon information and belief, the Firm attempted to secure a Waiver of Notice from the DOR but was unsuccessful in doing so.

41. Since the November 2, 2011 foreclosure sale had not extinguished the DOR's lien, Wells Fargo instructed the Firm to "rescind" the November 2, 2011 sale so as to enable Wells Fargo to conduct a new sale that would be effective in extinguishing all recorded interests in the Property junior to the Mortgage.

42. On February 16, 2012 and acting on the advice of one or more of the Defendants, Wells Fargo by SLS its attorney-in-fact executed a quitclaim deed of the Property to Valastro with the specific purpose and intention of "rescinding" the November 2, 2011 foreclosure sale and enabling Wells Fargo to thereafter conduct a new foreclosure sale that would extinguish all recorded interests junior the Wells Fargo Mortgage.

43. On April 2, 2012, the Firm caused the quitclaim deed executed by Wells Fargo on February 16, 2012 and running in favor of Valastro to be recorded with the Registry in Book 48765, Page 108. The then current value of the Property was approximately $225,000.00.

44. At all times relevant herein, the Defendants knew or should have known that the quitclaim deed given by Wells Fargo to Valastro would not, could not and did not accomplish a rescission of the November 2, 2011 foreclosure sale such that Wells Fargo could then proceed to

Case 1:15-cv-40027-ADB   Document 1   Filed 02/13/15   Page 9 of 14

conduct a new foreclosure sale that would be effective to extinguish all recorded interests in the Property junior in priority to the Mortgage.

45. The Defendants committed malpractice and were negligent when they advised Wells Fargo to execute a quitclaim deed of the Property to Valastro conveying a 100% fee simple interest in the Property to Valastro without condition and for nominal consideration.

46. On November 5, 2012, the DOR caused a Notice of Massachusetts Tax Lien in the original principal amount of $4,440.91 to be recorded against Valastro's interest in the Property with the Registry in Book 49906, Page 266.

47. On December 3, 2012, the Department of the Treasury – Internal Revenue Service caused Notice of Federal Tax Lien in the original principal amount of $32,825.93 to be recorded against Valastro's interest in the Property with the Registry in Book 50053, Page 61.

48. Upon information and belief as early as December of 2012, the Defendants, or associate attorneys acting under their direction, made efforts to secure a deed of the Property from Valastro to Wells Fargo including an offer of compensation to be paid by CGA&W in exchange for such a deed.

49. Upon information and belief, throughout 2013 and into 2014 the Defendants or associate attorneys acting under their direction continued efforts to try and negotiate with Valastro and/or his attorney for a deed conveying the Property back to Wells Fargo while at the same time failing to (a) disclose to Wells Fargo or to its loan servicer the full nature and extent of the problem posed by the quitclaim deed from Wells Fargo to Valastro recorded on April 2, 2012; (b) failing to disclose to Wells Fargo that the aforementioned quitclaim deed had not accomplished a "rescission of the November 2, 2011 foreclosure" nor positioned Wells Fargo to enable it to conduct a new foreclosure sale of the Property; and, (c) failing to initiate any legal

action against Valastro in the nature of unjust enrichment and/or suit on the remaining balance due and owing on the Note or otherwise with an accompanying effort to secure an attachment against the Property or other form of prejudgment security for payment of any judgment recovered against Valastro.

50. On March 18, 2013, the DOR caused a Notice of Massachusetts Tax Lien in the original principal amount of $6,751.12 to be recorded against Valastro's interest in the Property with the Registry in Book 50598, Page 123.

51. On July 15, 2013, the DOR caused a Notice of Massachusetts Tax Lien in the original principal amount of $4,459.08 to be recorded against Valastro's interest in the Property with the Registry in Book 51197, Page 147.

52. On November 4, 2013, the DOR caused a Notice of Massachusetts Tax Lien in the original principal amount of $2,369.31 to be recorded against Valastro's interest in the Property with the Registry in Book 51704, Page 192.

53. On September 22, 2014, the Department of the Treasury – Internal Revenue Service caused a Notice of Federal Tax Lien in the original principal amount of $29,712.25 to be recorded with the Registry in Book 52821, Page 25.

## COUNT I

### Legal Malpractice

54. Wells Fargo restates and incorporates by reference the allegations contained in paragraphs 1 through 53 above.

55. As attorneys for Wells Fargo, the Defendants had a duty to zealously represent Wells Fargo and otherwise exercise due care to render competent legal advice to Wells Fargo

relative to remedial actions that could be taken to resolve the problem posed by the omitted notice to the DOR.

56. The Defendants committed legal malpractice in advising Wells Fargo that it could effectuate a rescission of the November 2, 2011 foreclosure sale by recording a quitclaim deed conveying the Property to Valastro thereby leaving Wells Fargo then situated to conduct a new foreclosure that would effectively extinguish all recorded interests in the Property junior to the Mortgage.

57. At some point subsequent to the recordation of the quitclaim deed from Wells Fargo to Valastro in April of 2012, the Defendants became aware of the malpractice which had been committed by one or more of the Defendants and/or by associate attorneys acting under their direction.

58. The Defendants committed further acts or omissions constituting malpractice by continuing efforts to try and negotiate with Valastro and/or his attorney for a deed conveying the Property back to Wells Fargo while at the same time failing to (a) disclose to Wells Fargo or to its loan servicer the full nature and extent of the problem posed by the quitclaim deed from Wells Fargo to Valastro recorded on April 2, 2012; (b) failing to disclose to Wells Fargo that the aforementioned quitclaim deed had not accomplished a "rescission of the November 2, 2011 foreclosure" nor positioned Wells Fargo to enable it to conduct a new foreclosure sale of the Property; and, (c) failing to initiate any legal action against Valastro in the nature of unjust enrichment and/or suit on the remaining balance due and owing on the Note or otherwise with an accompanying effort to secure an attachment against the Property or other form of prejudgment security for payment of any judgment recovered against Valastro

59. The actions of the Defendants caused Wells Fargo to convey the Property to Valastro without condition or reservation and for nominal consideration.

60. Under the circumstances described herein, it appears that Wells Fargo does not now have a cognizable claim against Valastro for rescinding or reforming the February 16, 2012 deed. Reference is made to *Ward v. Ward,* 70 Mass.App.Ct. 366 (2007).

61. Pursuant to G.L. c. 156A:6(b), the Defendants Ablitt, Scofield, Connolly, Geaney, and Willard as shareholder attorneys of the Firm are personally liable to Wells Fargo for the malpractice of each of them, the other shareholder attorneys and/or all associate attorneys acting under their direction.

62. As a result of the breach of their legal duty to represent Wells Fargo with the requisite degree of care and competence required of attorneys in their area of concentration, the Defendants caused Wells Fargo significant damages in the form of a complete loss of the value of its loan collateral and compelling Wells Fargo to incur additional legal fees and costs to seek redress against these Defendants.

## COUNT II

### Breach of Contract

63. Wells Fargo restates and incorporates by reference the allegations contained in paragraphs 1 through 62 above.

64. In contracting with Wells Fargo to prosecute foreclosure actions in accordance with applicable law in an efficient and competent manner, it was reasonably foreseeable on the part of the Defendants that the investors and loan owners on whose behalf the Defendants were instructed to bring foreclosure actions like Wells Fargo would be harmed if they prosecuted such

actions in a negligent or substandard manner and without the degree of efficiency and competence required under the terms of the Firm's contract with Wells Fargo.

65.     As a result of the Defendants' breach of this contract Wells Fargo has suffered significant damages including loss of its loan collateral and attorney's fees and costs incurred and to be incurred in this action.

WHEREFORE, the Plaintiff respectfully requests that the Court:

(a)     Enter judgment in favor of Wells Fargo and against the Defendants finding them jointly and severally liable for the damages caused to Wells Fargo as a result of the legal malpractice alleged herein;

(b)     Enter judgment in favor of Wells Fargo and against the Defendants finding them jointly and severally liable for damages caused to Wells Fargo as a result of the breach of their contract to perform competent legal services for the benefit of Wells Fargo and where it was reasonably foreseeable that errant advise provided to Wells Fargo would cause damage to Wells Fargo;

(c)     Determine and enter judgment in favor of Wells Fargo for the damages suffered by Wells Fargo as a result of the Defendants' legal malpractice and breach of contract, including attorney's fees and costs incurred by Wells Fargo in prosecuting this action;

(d)      Grant such further relief as the court deems just.

Date: February 13, 2015                    Respectfully submitted,
                                           Plaintiff,
                                           Wells Fargo Bank, N.A., as Trustee for
                                           Option One Mortgage Loan Trust 2007-
                                           FXD1, Asset-Backed Certificates, Series
                                           2007-FXD1

By its attorney,

/s/ John S. McNicholas
John S. McNicholas, Esq. BBO #546542
Korde & Associates, P.C.
321 Billerica Road, Suite 210
Chelmsford, MA 01824
(978)-256-1500 (ext. 203)
jmcnicholas@kordeassoc.com